IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRACY RICHARDSON,<br><br>      Plaintiff,<br><br>v.<br><br>DEKALB COUNTY POLICE DEPARTMENT, DETECTIVE M.G. HELLERMAN, Individually and in his Official Capacity, DETECTIVE B.C. BRUEGGERMAN, Individually and in his Official Capacity, SOUTH DEKALB TOWING & TRANSPORT, INC., and HECTOR MELQUIADES CASTRO,<br><br>      Defendants. | CIVIL ACTION NO.<br><br>1:11-cv-4386-JEC |

### ORDER & OPINION

The case is before the Court on defendants' Motion to Dismiss [4]. The Court has reviewed the record and the arguments of the parties and, for the reasons discussed below, concludes that defendants' Motion [4] should be **GRANTED in part and DENIED in part**.

### BACKGROUND

In support of the claims asserted in this action, plaintiff alleges the following facts. On December 18, 2009, plaintiff was sitting in his black Chevrolet Yukon on a street in Lithonia, Georgia. (Compl. [1] at ¶ 7.) Plaintiff was joined in the front of

the vehicle by an unknown male with whom plaintiff intended to negotiate the sale of a "music verse." (*Id.*) According to plaintiff, his counterpart was supposed to pay $1,500 in exchange for the verse. (*Id.*) However, to plaintiff's dismay, the unknown male attempted to purchase the verse with marijuana rather than money. (*Id.* at ¶¶ 7-8.) The exchange turned violent when the unknown purchaser pulled out and discharged a handgun. (*Id.* at ¶¶ 9-10.) A second unknown assailant subsequently drove up in a separate car and fired several shots into the Yukon, some of which hit the plaintiff. (Compl. [1] at ¶¶ 11-12, 14.) Both of the unknown assailants then fled the scene. (*Id.* at ¶ 13.)

At some point during this melee, the DeKalb County Police Department was called to the scene. Upon their arrival, DeKalb County detectives Hellerman and Brueggeman inspected the bullet-riddled Yukon. Brueggeman observed and collected a large amount of marijuana, a notebook and two cell phones. (*Id.* at ¶¶ 27-29.) Brueggeman observed but did not collect a Mac laptop computer, which had been sitting on the rear floor board of the Yukon underneath some clothing. (*Id.* at ¶¶ 30-31.) The Yukon was subsequently "released" to South DeKalb Towing & Transport, Inc. ("South DeKalb Towing"). (*Id.* at ¶¶ 32-33.) The Yukon was towed to a crime lab for processing, and then taken back to the towing company's headquarters. (Compl. [1] at ¶¶ 34-35.)

While recovering from his wounds at the hospital, plaintiff asked his mother to collect certain valuables that were in the Yukon at the time of the incident. (*Id.* at ¶ 23.) However, after speaking to his mother, plaintiff realized that many of these items had disappeared. (*Id.* at ¶ 24.) The missing items included: a diamond necklace with a diamond-encrusted Atlanta Falcons pendant, a gold and diamond ring, diamond earrings, a Mac laptop, an Apple iPhone, a Metro PCS cell phone, men's clothing, sunglasses, Richardson's birth certificate, Richardson's Georgia driver's license, and a "lyrics notebook." (*Id.*)

The detectives do not seem to have noticed most of these items upon initial inspection of the vehicle, or at least they did not collect them. Plaintiff's mother at one point filed a complaint against detectives Hellerman and Brueggeman, alleging that they stole property from the Yukon, but this does not seem to be plaintiff's theory today. (*Id.* at ¶ 25.) Instead, plaintiff alleges that at some point while the Yukon was in the custody of South DeKalb Towing, the Mac laptop was stolen by towing company employee Hector Melquiades Castro and sold to a pawn shop. (Compl. [1] at ¶¶ 36-37.) Plaintiff asserts that there has been a "rash of reported thefts involving vehicles towed by [South DeKalb Towing] prior to this incident" and he accuses the detectives of a "lack of concern towards" his belongings. (*Id.* at ¶¶ 38, 61.)

3

Plaintiff brings the present action against the County, its detectives, South DeKalb Towing, and Castro. (*Id.* at 1.) In the complaint, plaintiff asserts federal constitutional claims against defendants under 42 U.S.C. § 1983. (*Id.*) He also asserts various state law claims. (*Id.* at 1-2.) Plaintiff's claims can be grouped into three different categories: (1) federal constitutional claims against the detectives for performing an inadequate inventory of the Yukon, (2) federal constitutional claims against the County based on the detectives' actions and based on the County's failure to adequately train them, and (3) state law claims against the detectives and against the County. (Compl. [1] at ¶¶ 26-65.) Defendants DeKalb County and the detectives have filed a motion to dismiss, which is now before the Court.[1] (Defs.' Mot. to Dismiss [4].)

## DISCUSSION

### I. MOTION TO DISMISS STANDARD

In deciding a motion to dismiss under Federal Rule 12(b)(6), the Court assumes that all of the allegations in the complaint are true and construes all of the facts in favor of the plaintiff. *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010). That said, in order

---

[1] South DeKalb Towing is named as a defendant but has not joined the County's motion and has not filed an answer or its own motion to dismiss. Castro has been dismissed as a defendant due to lack of service. (Order [10].)

to survive a motion to dismiss a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facially plausible" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. FEDERAL CLAIMS AGAINST DETECTIVES IN THEIR INDIVIDUAL CAPACITIES

In Count I of the complaint, plaintiff alleges that defendants Hellerman and Brueggeman violated his rights by not conducting an inventory at the scene of the crime. (Compl. [1] at ¶¶ 26-33.)  In Count II, plaintiff alleges that the detectives failed to conduct an inventory "during the execution of a search warrant." (*Id.* at ¶¶ 34-54.).[2]  In both Counts, plaintiff seeks to impose liability on the

---

[2] Plaintiff describes the detectives' actions at the crime scene as the "execut[ion] [of] a search warrant," but in another part of the complaint he states that the detectives "intended to execute a search warrant . . . and failed to perform an inventory." (Compl. [1] at ¶¶ 26, 40, 43.)  The Court is thus uncertain whether plaintiff believes the detectives executed a search warrant, or that they intended to execute a search warrant but failed to do so.  It is also unclear whether the detectives would have had enough time to obtain a search warrant before arriving on the scene of the shooting.  In any event, plaintiff's argument is not that the detectives impermissibly conducted a search without a warrant, but instead he complains that the detectives did not perform a more invasive and effective search.

5

detectives in their individual capacity.  (*Id*. at ¶¶ 26-54.)

To address defendants' specific arguments, it is helpful to distinguish between an inventory search and an investigative search. The police may impound a car and take an inventory of an automobile without a search warrant, if under the circumstances it is reasonable to do so.  *See Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992).  "Because an inventory search is an exception to the Fourth Amendment's warrant requirement, . . . the government officer has the burden to show that the requirements of the inventory search exception have been met."  *Id*.  The Supreme Court has generally described those requirements as follows:

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents.  These procedures developed in response to three distinct needs:  the protection of the owner's property while it remains in police custody, *United States v. Mitchell*, 458 F.2d 960, 961 (CA9 1972); the protection the police [*sic*] against claims or disputes over lost or stolen property, *United States v. Kelehar*, 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California*, *supra*, 386 U.S., at 61-62, 87 S. Ct., at 790.

*South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976).  An inventory vehicle search may not be used as a pretext for an investigatory police motive.  *Sammons*, 967 F.2d at 1543 (citing *Opperman*, 428 U.S. at 375-76).

The Court offers this background to clarify that plaintiff is not challenging the search of his car as unduly invasive, or as a

6

pretext for an investigatory search.  Instead, plaintiff's grievance is that the police did not search his car thoroughly *enough*, resulting in their failure to adequately secure or inventory the car's contents.  (Compl. [1] at ¶¶ 40-41, 46.)  With this in mind, the Court considers the viability of the claims asserted in Counts I and II against the detectives in their individual capacity.

To succeed on his constitutional claims against the detectives, it is plaintiff's obligation to explain what duty the detectives owed him concerning their inventory search.  Both in his complaint and in his response brief, plaintiff fails to point to such a duty.  Indeed, plaintiff cites no constitutional right to have one's car inventoried, and the Court is aware of none.  At most, plaintiff's claims against the officers is one of negligence, but negligent conduct by a state's police officers does not give rise to a constitutional violation.  *Porter v. White*, 483 F.3d 1294, 1307-08 (11th Cir. 2007)(citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).

In addition, plaintiff has also failed to allege a violation of clearly established federal law sufficient to overcome the detectives' qualified immunity from suit in their individual capacities.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1346-50 (11th Cir. 2002)("Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does

7

not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). With respect to qualified immunity, the salient question is whether, based on the law in existence at that time, the detectives had "fair warning" that their alleged treatment of plaintiff was unconstitutional. *Id*. Plaintiff presents no argument or authority to address this question, and he fails to respond to defendants' argument that the detectives are shielded from liability by qualified immunity. (Pl.'s Resp. [6] at 3.)   Thus, with respect to plaintiff's constitutional claims against the detectives in their individual capacities, defendants' Motion to Dismiss [4] is **GRANTED**.

### III. FEDERAL CLAIMS AGAINST DEKALB COUNTY

Plaintiff asserts two claims against DeKalb County.[3] (Compl. [1] at 12-16.)   First, plaintiff sues the detectives in their official capacities for violating plaintiff's constitutional rights, which the Court will interpret as an action against DeKalb County. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   (*Id*. at 1.) Second, plaintiff claims that DeKalb County failed to train its

---

[3] Plaintiff names the DeKalb County Police Department rather than DeKalb County as a defendant.  This might have presented a problem, but plaintiff has sued the detectives in their official capacities, which is the same as suing DeKalb County.  The Court will thus refer to DeKalb County as the defendant, not the DeKalb County Police Department.

8

officers, including detectives Hellerman and Brueggeman, in the proper procedure for inventorying a vehicle. (*Id.* at 14-15.)

Local government entities are typically not liable for the unconstitutional conduct of an employee, unless the deprivation of rights was the result of a policy or custom of the municipality. *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000)(citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978)("it is when execution of a government's policy or custom...inflicts the injury that the government as an entity is responsible under § 1983.")). However, a municipality with the "correct" policy in place may be sued if it displays indifference toward whether its employees followed that policy. *Id.* at 1375-76.

In the present case, plaintiff does not argue that DeKalb County lacked a proper policy regarding inventory searches of vehicles and the need for such intrusions to comply with Fourth Amendment standards. Instead, plaintiff argues that the County failed to have its officers implement this policy and thereby exhibited deliberate indifference toward the rights of citizens whose vehicles are subject to inventory searches. In support of his theory, plaintiff avers that, prior to this incident, South DeKalb Towing has been implicated in "a rash" of thefts in connection with its towing activities taken at the behest of DeKalb County, as part of the latter's practices

9

regarding the impoundment and inventory search of vehicles. (Compl. [1] at ¶ 38.)

In response, defendant DeKalb County replies that "[t]here is no evidence that DeKalb County would have been on notice of a serious supervisory or training deficiency in the matter of inventory of personal property." (Def.'s Br. [4] at 7.) The Court concludes that plaintiff's allegation is sufficient, at the motion to dismiss stage, to proceed with this claim. Accordingly, defendant's motion to dismiss plaintiff's federal claim against the County for failure to train is **DENIED without prejudice.**[4]

## IV. STATE LAW CLAIMS

As mentioned, plaintiff also alleges that defendants violated state law. (Compl. [1] at 1-2.) Defendants seek to dismiss plaintiff's state law claims against the defendants on various grounds. The Court **DENIES without prejudice** this motion. DeKalb

---

[4] That said, prior to summary judgment motions, plaintiff will be expected to put more meat on the bones of this purported Constitutional claim. That is, if it turns out only that DeKalb County was deliberately indifferent as to the state property rights of its citizens not to have stolen property they have entrusted to the County, then it is difficult to see how such an allegation makes out a federal constitutional claim, as opposed to merely a state law claim.

If plaintiff can foresee that a federal claim will be difficult to sustain, he might be well advised to expedite what may be stronger state law claims by dismissing this federal action.

10

County may file a summary judgment motion on these grounds, if it chooses to do, following the conclusion of discovery.

## **CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss [4] is **GRANTED** as to the federal claims against the individual defendants and **DENIED without prejudice** as to all other claims.

SO ORDERED, this <u>29th</u> day of <u>MARCH</u>, 2013.


<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)